UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 1:22-cr-00155-LEW |
| | ) | |
| JASON LEVASSEUR, | ) | |
| | ) | |
| Defendant | ) | |

**<u>ORDER ON DEFENDANT'S RENEWED MOTION TO DISMISS INDICTMENT</u>**

In advance of Defendant Jason Levasseur's sentencing for violating 18 U.S.C. § 922(g)(1), the federal "felon-in-possession" statute, he filed a Renewed Motion to Dismiss Indictment (ECF No. 69). Levasseur previously argued that his conduct was protected by the Second Amendment in his Motion to Dismiss Indictment (ECF No. 26), which I denied. *See generally United States v. Levasseur*, No. 1:22-cr-00155-LEW, 2023 WL 6623165 (D. Me. Oct. 11, 2023). Having surveyed "the historical tradition that delimits the outer bounds of the right to keep and bear arms," *id.* at *5 (quoting *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 19 (2022)), I reasoned that "[t]he common thread tying the early-American history of firearm regulation together is that governments exercised authority to disarm persons seen as too dangerous to possess a firearm," *id.* at *7. I rejected Levasseur's as-applied challenge because § 922(g)(1) was "sufficiently analogous to the historical practices of disarming dangerous persons insofar as the statute disarms felons who can reasonably be viewed as too dangerous to possess a firearm." *Id.*

at *8.  Because Levasseur was previously convicted for the unlawful possession of a controlled substance, his as-applied challenge failed.  *Id.* at **8–9.

After the Supreme Court's recent decision in *United States v. Rahimi*, Levasseur has renewed his motion to dismiss the indictment and advanced two arguments.  No. 22-915, 2024 WL 3074728, at *3 (U.S. June 21, 2024).  First, Levasseur argues that this prosecution violates the Second Amendment because, unlike Rahimi, he has not been "found to pose a credible threat to the physical safety of others."  *Id.* at *10.  Second, Levasseur contends that § 922(g)(1)'s lifelong prohibition on felons possessing firearms is inconsistent with the traditional methods of regulating firearms.  Because I assume the reader's familiarity with the facts and the law as explained in my previous Order, my analysis is limited to whether *Rahimi* supports Levasseur's argument.  *See generally Levasseur*, 2023 WL 6623165.  Having reviewed *Rahimi*, I conclude that § 922(g)(1) is constitutional as applied to Levasseur, so his Motion is DENIED.

Unlike this case, *Rahimi* involved a Second Amendment challenge to 18 U.S.C. § 922(g)(8).  That statute "prohibits an individual subject to a domestic violence restraining order from possessing a firearm if that order includes a finding that he 'represents a credible threat to the physical safety of [an] intimate partner,' or a child of the partner or individual."  *Rahimi*, 2024 WL 3074728, at *3 (quoting 18 U.S.C. § 922(g)(8)).  After "Rahimi became enraged," he grabbed his girlfriend "by the wrist, dragged her back to his car, and shoved her in, causing her to strike her head against the dashboard" and "fired" a gun.  *Id.* at **3–4.  His girlfriend "went to court to seek a restraining order."  *Id.* at *4.  She submitted an affidavit about this assault and other assaults by Rahimi.  A state court judge issued a

restraining order with findings that Rahimi committed family violence that was likely to occur again and that Rahimi posed a credible threat to the physical safety of his girlfriend and child.  *Id.*  After several other gun-related incidents, the police obtained a warrant to search Rahimi's residence, where they found a pistol, a rifle, ammunition, and a copy of the restraining order.  *Id.*  Rahimi was indicted for possessing a firearm while subject to a domestic violence restraining order.  18 U.S.C. § 922(g)(8).

Rahimi moved to dismiss the indictment, arguing that § 922(g)(8) was facially unconstitutional.  The Supreme Court disagreed, holding that "[w]hen a restraining order contains a finding that an individual poses a credible threat to the physical safety of an intimate partner, that individual may—consistent with the Second Amendment—be banned from possessing firearms while the order is in effect."  *Rahimi*, 2024 WL 3074728, at *5.  The Court reiterated that "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition" of firearms.  *Id.* at 6 (citing *Bruen*, 597 U.S. at 26–31).  To that end, courts "must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, apply[ing] faithfully the balance struck by the founding generation to modern circumstances."  *Id.* (alteration in original) (quoting *Bruen*, 597 U.S. at 29).  "Why and how the regulation burdens the [Second Amendment] right are central to this inquiry."  *Id.*

The Court concluded that § 922(g)(8) was "constitutional as applied to the facts of Rahimi's own case" because "the Government offer[ed] ample evidence that the Second Amendment permits the disarmament of individuals who pose a credible threat to the physical safety of others."  *Rahimi*, 2024 WL 3074728, at *7.  More specifically, "[b]y the

3

1700s and early 1800s," there were "two distinct legal regimes" that "specifically addressed firearms violence." *Id.*

First, there were surety laws. *Id.* at **7–8. The "law authorized magistrates to require individuals suspected of future misbehavior to post a bond." *Id.* at *8. Surety laws could also "be invoked to prevent all forms of violence, including spousal abuse." *Id.* These laws "also targeted the misuse of firearms," and they "often offered the accused significant procedural protections." *Id.* Someone with reasonable cause of fear that the accused would either cause harm or breach the peace needed to submit a complaint to a judge or justice of the peace. *Id.* Next, the magistrate "would take evidence," and if there was cause for the charge, he would "summon the accused, who could respond to the allegations." *Id.* "Bonds could not be required for more than six months at a time, and an individual could obtain an exception if he needed his [fire]arms for self-defense or some other legitimate reason." *Id.*

Second, there were "going armed laws" that prohibited riding or going armed with dangerous or unusual weapons to terrify people, and violations were punished with forfeiture and imprisonment. *See id.* at *9.

Drawing from these two historical regulations of firearms, the Supreme Court reasoned that "[t]aken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.*; *see also Levasseur*, 2023 WL 6623165, at *7 (concluding "that § 922(g)(1) is sufficiently analogous to the historical practices of

4

disarming dangerous persons insofar as the statute disarms felons who can reasonably be viewed as too dangerous to possess a firearm").

The Court reasoned that § 922(g)(8) was sufficiently analogous to these two historical regulations because they restrict "gun use to mitigate demonstrated threats of physical violence, just as the surety and going armed laws do." *Rahimi*, 2024 WL 3074728, at *9. The Court cautioned that it did "not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse." *Id.* Notably, § 922(g)(8) applies only after a court has found that the defendant "represents a credible threat to the physical safety" of another. § 922(g)(8)(C)(i). That "matches the surety and going armed laws, which involved judicial determinations of whether a particular defendant likely would threaten or had threatened another with a weapon." *Rahimi*, 2024 WL 3074728, at *9. Furthermore, like the "surety bonds of limited duration," the statute temporarily restricted Rahimi's right to bear arms while he was subject to the restraining order, which was at most one to two years after his release from prison. *Id.* at *10. Lastly, like the going armed laws, the statute penalized violators with imprisonment. *Id.*

In his Motion, Levasseur attempts to distinguish himself from Rahimi. It is true that unlike Rahimi, Levasseur has not been found by a court to pose a credible threat of danger. Furthermore, § 922(g)(1)'s lifetime prohibition on firearm possession differs from the temporary restriction under § 922(g)(8) at issue in *Rahimi*. But Levasseur's attempts to distinguish himself fall short.

5

For starters, *Rahimi*, like the Supreme Court's other Second Amendment cases, "did not 'undertake an exhaustive historical analysis'" of the Second Amendment. *Rahimi*, 2024 WL 3074728, at *11 (quoting *Bruen*, 597 U.S. at 31). Instead, the Court's analysis was limited to whether § 922(g)(8) was facially unconstitutional. *See id.* at *17 (Gorsuch, J., concurring) (emphasizing the limited nature of the Supreme Court's holding). The Court held that "individual[s] found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed"—but the Court did not hold that *only* those individuals may be temporarily disarmed. *Id.* at *11 (majority opinion). Instead, the Supreme Court advised that it did "not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse." *Id.* at *9. Similarly, while the Supreme Court emphasized § 922(g)(8)'s temporary restriction on Rahimi's Second Amendment rights, the Court's holding did not turn on that feature. *See id.* at *10. Accordingly, I conclude that *Rahimi* leaves my prior analysis undisturbed. *See Levasseur*, 2023 WL 6623165, at *7–9.

At most, *Rahimi* is a data point about the appropriate level of generality when interpreting the Second Amendment. And while § 922(g)(8) closely resembled historical analogues, the Supreme Court also explained that its "precedents were not meant to suggest a law trapped in amber." *Rahimi*, 2024 WL 3074728, at *6; *see also id.* at *30 (Barrett, J., concurring) ("To be sure, a court must be careful not to read a principle at such a high level of generality that it waters down the right."). Having previously concluded that the Second Amendment permits the disarmament of "felons who can reasonably be viewed as too

dangerous to possess a firearm," I adhere to my previous conclusion that Levasseur may constitutionally be disarmed because of his prior conviction for the possession of an unlawful controlled substance. *Levasseur*, 2023 WL 6623165, at *8. As I explained, the First Circuit's pre-*Bruen* decision in *United States v. Torres-Rosario* offers support. 658 F.3d 110, 113 (1st Cir. 2011). There, the First Circuit reasoned that "[a]ssuming *arguendo* that the Supreme Court might find some felonies so tame and technical as to be insufficient to justify" disarmament, "drug dealing [was] not likely to be among them."[1] *Id.* The same is true of Levasseur's prior conviction for the possession of an unlawful controlled substance.

For these reasons, Levasseur's Renewed Motion to Dismiss Indictment (ECF No. 69) is **DENIED**.

SO ORDERED.

Dated this 9th day of July, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge

---

[1] To the extent that this language in *Torres-Rosario* constitutes a holding, it has not "unmistakably been cast into disrepute by supervening authority," like *Bruen* or *Rahimi*. *Eulitt v. Me., Dep't of Educ.*, 386 F.3d 344, 349 (1st Cir. 2004), *abrogated on other grounds by Carson v. Makin*, 596 U.S. 767 (2022).